IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES ROBERT REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JASON C. GARNETT, BARRY W. ) | |
| PEARSON, THOMAS SIMMONS, ) | CIVIL NO. 05-716-JPG |
| PAMELA MORAN, STEPHEN ) | |
| DEMPSEY, ANTHONY McALLISTER, ) | |
| KENNETH D. BROWN, NEIL C. ) | |
| BANTICAN, ALAN M. UCHTMAN, ) | |
| JEFFREY D. BROSHEARS, JASON P. ) | |
| VASQUEZ, ROGER E. WALKER, BRIAN ) | |
| K. FAIRCHILD, and SHERRY BENTON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, a former inmate in various institutions in the Illinois Department of Corrections, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are legally frivolous and thus subject to summary dismissal.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Against Defendants all defendants for violations of due process during disciplinary hearings.
>
> **COUNT 2:** Against Defendants Garnett, Pearson, Simmons, Dempsey, McAllister, Moran, Brown, and Bantican for violating the First Amendment in confiscating Plaintiff's religious materials.

**FACTUAL ALLEGATIONS**

Plaintiff states that on March 25, 2005, during a shakedown of his cell at Lawrence Correctional Center, Defendant Pearson confiscated a number of Plaintiff's papers and publications. Plaintiff was placed in segregation on an investigatory status and was later issued a disciplinary report charging him with unauthorized gang activity for possession of white supremacist publications that were considered security threat group materials. The adjustment committee held a hearing on March 29, 2005, and found Plaintiff guilty of the charges. Plaintiff was disciplined with six months segregation, six months demotion to c-grade, a disciplinary transfer, a six-month restriction on contact visits and audio/visual privileges, and a three-month restriction of yard time. After this

hearing, Plaintiff continued to receive in the mail materials from the same organizations who published the materials that were confiscated. Plaintiff states that all of these materials were reviewed in the mail room and he was allowed to have them, even after he had been disciplined for possession of similar materials. Plaintiff believes that defendants intentionally allowed these materials to pass through the mail room so that they could later discipline Plaintiff for possessing the materials. On April 29, 2005, Plaintiff was written another disciplinary report for possession of additional security threat group materials. Shortly after, Plaintiff was transferred to Menard Correctional Center. The adjustment committee hearing on the April 2005 charges was held there on May 13, 2005. Plaintiff was found guilty of unauthorized gang activity and was disciplined with six months segregation, six months demotion to c-grade, revocation of three months good conduct credit, a six-month restriction on contact visits and commissary, and three months lost yard time. Plaintiff grieved his dissatisfaction with the procedures used in the hearing, and on June 22, 2005, the Administrative Review Board remanded the second disciplinary proceeding back to the Menard adjustment committee so that additional witness statements could be made part of the record. On remand, additional witnesses were interviewed and a second hearing held. However, according to the adjustment committee's final summary, the disciplinary measures taken against Plaintiff were not changed, and he was still subjected to six months segregation, six-month demotion to c-grade, revocation of three months of good conduct credit, six-month restriction on contact visits and commissary, and three months lost yard time. Despite the report submitted with the complaint, Plaintiff states that he has not yet been found guilty of the charges in the April 29 disciplinary report.

      Plaintiff argues that Defendants Garnett, Pearson, Simmons, Dempsey, McAllister, Moran, Brown, and Bantican of Lawrence Correctional Center, in confiscating his Christian Identity, National Socialist, and white supremacist materials, and in providing an unfair hearing denied him

his constitutional guarantees of free speech, freedom of religion, due process, and equal protection. Plaintiff further argues that Defendants Alan Uchtman, Jason Vasquez, and Jeffrey Broshears at Menard Correctional Center violated his due process and equal protection guarantees during the adjustment committee hearings on the April 29 disciplinary report. Finally, he argues that Defendants Roger Walker, Brian Fairchild, and Sherry Benton of the Administrative Review Board denied him his due process and equal protection rights.

Based on these facts and the documents submitted as exhibits to the complaint, Plaintiff presents essentially two claims. First, that he was denied due process during each of the disciplinary proceedings and subsequent administrative review. Second, that his First Amendment rights were violated when his religious materials were confiscated. The Court will consider each issue in turn.

### COUNT 1

When a plaintiff brings an action under § 1983 for procedural due process violations during disciplinary proceedings, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than

administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Plaintiff was twice sent to disciplinary segregation for six months. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Therefore, Plaintiff's due process claim regarding time in segregation is without merit. Plaintiff also claims that he was demoted to c-grade, denied commissary privileges, denied contact visits, and denied yard access. However, these allegations also do not present a viable constitutional claim. *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges).

A loss of good conduct credit, however, does implicate a liberty interest because such a loss potentially affects the length of Plaintiff's sentence. As such, Plaintiff does present a cognizable due process claim regarding good time credit revoked in the May 2005 disciplinary proceeding. However, the proper method for challenging the revocation of good time credit is habeas corpus, but only after Plaintiff has exhausted his remedies through the Illinois state courts. *See, e.g., Heck* v. Humphrey, 512 U.S. 477, 480-81 (1994). The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill.App. 1981)). The State of Illinois must first be afforded an

opportunity, in a mandamus action pursuant to 735 ILCS 5/14-101 *et seq*. to consider the merits of Plaintiff's claim.

Finally, as to the claims that Plaintiff was denied due process in the administrative review of his grievances regarding the disciplinary hearings, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Accordingly, Plaintiff has not stated a claim of constitutional dimension regarding the grievance process.

Based on the foregoing, Count 1 is dismissed without prejudice to Plaintiff bringing his claims regarding lost good conduct credit in a properly filed habeas corpus action, ***but only after he has exhausted his state court remedies***.

### COUNT 2

Plaintiff also claims that the confiscation of the white supremacist materials, which he argues were religious materials of the Christian Identity movement, violated his First Amendment rights to free speech and freedom of religion. The Seventh Circuit has held that "the arbitrary denial of access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996), *quoting Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (per curiam), *cert. denied*, 488 U.S. 863 (1988).

It is well-established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990); *see Al-Alamin v. Gramley,* 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting

cases).  On the other hand, a prison regulation that impinges on an inmate's First Amendment rights is nevertheless valid "if it is reasonably related to legitimate penological interests."  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)).  Such interests include inmate security and the proper allocation of limited prison resources.  *See id.* at 348, 352-53; *Turner,* 482 U.S. at 90; *Al-Alamin,* 926 F.2d at 686.  Based on Plaintiff's allegations and these legal standards Count 2 of the complaint cannot be dismissed at this point in the litigation.

## DISPOSITION

Plaintiff may proceed on Count 2 of the complaint against Defendants Garnett, Pearson, Simmons, Dempsey, McAllister, Moran, Brown, and Bantican.  Because the claims against Defendants Uchtman, Broshears, Vasquez, Walker, Fairchild, and Benton have been dismissed from the action, those individuals are **DISMISSED** as defendants.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for ***Defendants Garnett, Pearson, Simmons, Dempsey, McAllister, Moran, Brown, and Bantican***.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on ***Defendants Garnett, Pearson, Simmons, Dempsey, McAllister, Moran, Brown, and Bantican*** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections ("IDOC") who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal.  Address information obtained from IDOC pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to

defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**Dated: December 8, 2006**

                                                  **s/ J. Phil Gilbert**
                                                  **U. S. District Judge**